Nationstar Mtge. LLC v Vassi

2026 NY Slip Op 02375

April 21, 2026

Appellate Division, First Department

Moulton, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Nationstar Mortgage LLC, Respondent,

v

Steve Vassi, Appellant.

Supreme Court, Appellate Division, First Judicial Department

Decided and Entered: April 21, 2026

Index No. 810060/12|Appeal No. 5243|Case No. 2025-01132|

Sallie Manzanet-Daniels

Peter H. Moulton Ellen Gesmer LlinÉT M. Rosado Shlomo S. Hagler

Law Office of Christopher Thompson, West Islip (Christopher Thompson of counsel), for appellant.

Friedman Vartolo LLP, Garden City (Ronald P. Labeck of counsel), for respondent.

Defendant appeals from an order and judgment (one paper) of Supreme Court, New York County (Francis A. Kahn, III, J.), entered on January 15, 2025, which granted plaintiff's motion to confirm the referee's report and for judgment of foreclosure and sale, and denied defendant's cross-motion for the tolling of interest.

Moulton, J.

[*1]

Defendant Steve Vassi appeals from a judgment of foreclosure and sale, entered January 15, 2025, which granted plaintiff Nationstar Mortgage LLC's motion to confirm the referee's report and for judgment of foreclosure and sale, and denied Vassi's cross-motion to toll interest.

Facts

On April 8, 2008, defendant Steve Vassi executed a note in favor of CitiMortgage, Inc., in the principal sum of $400,000. As security for the note, he executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. The mortgage was secured by Vassi's condominium property located at 520 East 81st Street, Apartment 2M, in Manhattan. The loan was modified under a Home Affordable Modification Agreement, effective December 1, 2009, which adjusted the principal balance and the interest on the loan. In December 2011, CitiMortgage, Inc. endorsed the note to plaintiff and assigned the mortgage to plaintiff as security for the note.

Procedural History

On April 3, 2012, plaintiff commenced this mortgage foreclosure action due to defendant's default in payment on May 1, 2010, and each month thereafter. Vassi was personally served with process on April 5, 2012, and filed an answer with seven affirmative defenses and one counterclaim.

On March 13, 2017, plaintiff moved for summary judgment, to strike defendant's answer, and for an order of reference. The motion was granted without opposition by order dated July 5, 2017. By deed dated January 25, 2018, Vassi transferred his interest in the encumbered property to nonparty IPA Asset Management, LLC, a distressed property buyer, for $620,000. On February 20, 2018, the referee issued a report of the amount due. More litigation ensued. Given the passage of time, another referee's report was issued on April 10, 2023.

As relevant to this appeal, on March 21, 2024, plaintiff filed its fourth, and finally successful, motion to confirm the referee's report dated April 10, 2023, and for the issuance of a judgment of foreclosure and sale.

Vassi opposed plaintiff's fourth motion and cross-moved for a second order tolling interest.FN1 In opposition to the motion, Vassi asserted that plaintiff failed to demonstrate that the pre-foreclosure notices were in the type size required by RPAPL 1304 and that plaintiff mailed them to him, by registered or certified mail and by first-class mail, in compliance with the statute.FN2 Vassi also argued that the referee's report was not based on admissible evidence. According to Vassi, the affidavit of Mario Selva, the assistant vice president of Rushmore Loan Management Services, sworn to on February 24, 2022, was inadmissible because the power of attorney that provided Rushmore with authority to act was conditioned on the terms of unproduced servicing agreements.

[*2]

In response, plaintiff filed a reply affirmation in further support of its motion and in opposition to Vassi's cross-motion. As to Vassi's cross-motion, plaintiff noted that the referee's report tolled interest, as required under the order dated February 13, 2019, and argued that no further tolling was warranted. In opposition to Vassi's argument that plaintiff failed to comply with RPAPL 1304, plaintiff argued for the first time that Vassi lacked standing to contest its compliance with the statute, because Vassi transferred his condominium to IPA. Plaintiff also asserted that, in any event, it demonstrated compliance with RPAPL 1304. Plaintiff further noted that Vassi did not dispute the amount due in the referee's report, which was amply supported by the admissible evidence.

Supreme Court granted plaintiff's motion and denied defendant's cross-motion, finding that plaintiff's evidence substantially supported the referee's report of the amount due. The court further found that Vassi's opposition and cross-motion were "entirely defective" because Vassi transferred his condominium to IPA during the foreclosure action which "effectively divested him of standing to challenge the plaintiff's request for a judgment of foreclosure and sale." Vassi appealed.

For the reasons described below, the court erroneously held that Vassi was divested of standing to challenge plaintiff's fourth motion and raise the defense of plaintiff's noncompliance with RPAPL 1304. Nevertheless, we affirm on the merits.

Discussion

A plaintiff's strict compliance with RPAPL 1304 is a condition precedent to the commencement of a mortgage foreclosure action involving a home loan (see U.S. Bank N.A. v Maioriello, 207 AD3d 428, 428 [1st Dept 2022]; U.S. Bank N.A. v Moran, 191 AD3d 451, 452 [1st Dept 2021]; Wells Fargo Bank, N.A. v Merino, 173 AD3d 491, 491 [1st Dept 2019]). The defense is timely raised by a defendant where, as here, it is raised in opposition to a plaintiff's motion to confirm the referee's report of the amount due and for judgment of foreclosure and sale (see Moran, 191 AD3d at 452; Merino, 173 AD3d at 491).

Notwithstanding Vassi's transfer of his interest in the mortgaged property to IPA, Vassi retained his standing to challenge the judgment of foreclosure and sale because he remains a defendant in the foreclosure action and is potentially liable for a deficiency judgment.FN3 As Vassi points out, plaintiff does not dispute that it did not waive its right to seek a deficiency judgment against him. Indeed, plaintiff sought a deficiency judgment under RPAPL 1371 in its complaint. The foreclosure judgment also provides that plaintiff "may seek to recover a deficiency judgment in accordance with RPAPL 1371 if applicable." Because the property has not yet been sold, a deficiency judgment remains a possibility given that a plaintiff has 90 days from the sale of the property to make a motion for a deficiency judgment before losing that right (see RPAPL 1371 [2], [3]).

[*3]

It is well settled that a defendant lacks standing to defend the action where it transfers the mortgaged property to a third party during the foreclosure action and the plaintiff waives its right to a deficiency judgment (see e.g. MTGLQ Invs., L.P. v Pettinato, 241 AD3d 544, 545 [2d Dept 2025] [the defendant lacks standing to raise the defense of noncompliance with RPAPL 1304 and 1306]; U.S. Bank N.A. v Giraldo, 230 AD3d 1369, 1371 [2d Dept 2024] [the defendant lacks standing to raise the defense of lack of personal jurisdiction]; U.S. Bank N.A. v Davids, 188 AD3d 943, 944 [2d Dept 2020] [the defendant lacks standing to raise the defense of statute of limitations]).

Significantly, in such a case, the defendant is neither a necessary nor a proper party and upon motion is properly severed from the action (see Pettinato, 241 AD3d at 545; Federal Natl. Mtge. Assn. v Connelly, 84 AD2d 805, 805 [2d Dept 1981]).

Moreover, where a defendant transfers the mortgaged property to a third party during the foreclosure action and the plaintiff waives a deficiency judgment (or the time to pursue a deficiency judgment has expired), the defendant is not aggrieved and therefore lacks standing to appeal (see HSBC Bank USA, N.A. v Bedinotti, 207 AD3d 927, 928 [3d Dept 2022] [rejecting the defendant's argument that "he retains standing since he remains obligated on the note [because] he acknowledges that plaintiff executed a waiver of deficiency judgment against him and, therefore, the appealed-from judgment does not impact defendant's existing rights"]; JPMorgan Chase Bank, N.A. v Seema, 169 AD3d 622, 622 [1st Dept 2019] [rejecting the defendant's argument that she has standing to appeal "as a debtor on the underlying mortgage" because more than 90 days had passed since the foreclosure sale and delivery of the deed and therefore, "plaintiff is now precluded from pursuing a deficiency judgment"]).

By contrast, in this case, plaintiff chose not to waive a deficiency judgment and its time to move for a deficiency judgment has not yet expired. Because Vassi is subject to a potential deficiency judgment and is a debtor on the underlying mortgage, he has an interest in defending the action notwithstanding that he transferred the mortgaged property to IPA and as a result, no longer has the right to redeem the property.

[*4]

U.S. Bank N.A. v Thompson (179 AD3d 497 [1st Dept 2020]) is instructive. There, the defendant appealed from an order vacating the dismissal of a mortgage foreclosure action that was previously dismissed based on the plaintiff's failure to appear at a court conference. In affirming the motion court's order vacating the dismissal, Thompson rejected the plaintiff's argument that the defendant lacked standing to appeal. Rather, Thompson held that the defendant "who remains obligated on the note and a potential deficiency judgment has standing to appeal from the order vacating the dismissal of this action, notwithstanding that he transferred his interest in the encumbered property before the action was commenced" (id. at 498).

To be sure, Vassi's right to redeem the property, a right that he once had, has been extinguished, and he therefore lacks standing to the extent that his standing is predicated on his property ownership (see First Fed. Sav. & Loan Assn. of Port Washington v Smith, 83 AD2d 601, 602 [2d Dept 1981] [the grantee of the original mortgagor lacked standing to compel redemption of the mortgage because although the grantee had the right to redeem the property "at one time, this right became extinguished when it conveyed all right, title and interest in the property to a subsequent grantee"]). However, like the defendant in Thompson, Vassi's standing is not predicated on his property ownership, but rather is predicated on his obligations under the note and his potential liability for a deficiency judgment.

The cases cited by plaintiff, Bancplus Mtge. Corp. v Galloway (203 AD2d 222 [2d Dept 1994]), NYCTL 1996-1 Trust v King (13 AD3d 429 [2d Dept 2004]), Deutsche Bank Natl. Trust Co. v Patrick (173 AD3d 973 [2d Dept 2019]) and U.S. Bank N.A. v Nur (208 AD3d 708 [2d Dept 2022]), do not compel a different result.

Galloway and King, two cases frequently cited for the principle that a defendant's act of transferring property during the pendency of a foreclosure action divests the defendant of standing, are premised solely on the defendant's loss of the equity of redemption. In Galloway, the defendant deeded her interest in the property to her son after she failed to appear or interpose an answer in a mortgage foreclosure action. Then, nearly six months after the plaintiff sold the mortgaged property at auction, the defendant sought to set aside the judicial sale by raising a service of process defense. Galloway held that the defendant lacked "standing to challenge the subsequent judgment of foreclosure and sale, or to otherwise seek redemption of the property" (Galloway, 203 AD2d at 223).

[*5]

In King, the defendant, who had previously defaulted in the action, conveyed her property interest to a third party one month after the plaintiff sold the property through a tax lien foreclosure sale (see King, 13 AD3d at 430; NYCTL 1996-1 Trust v King, 304 AD2d 629, 630-631 [2d Dept 2003], lv dismissed 100 NY2d 614 [2003]). King relied on Galloway to support its holding that the defendant was divested of standing to contest the foreclosure judgment and the subsequent sale by raising a service of process defense, because she transferred the property prior to moving to vacate the foreclosure judgment (see King, 304 AD2d at 630-631).

Significantly, unlike here, a deficiency judgment was not an issue in Galloway or King. In Galloway,the defendant "was never properly served," and therefore, "the default judgment was not binding upon her" (Galloway, 203 AD3d at 223). Moreover, by the time the defendant sought to set aside the judicial sale, the plaintiff's time to move for a deficiency judgment had already expired (see RPAPL 1371 [2], [3]). King involves a tax lien foreclosure, not a mortgage foreclosure (see RPAPL 1371 [1] [a deficiency judgment can be sought against "a person who is liable to the plaintiff for the payment of the debt secured by the mortgage"]).

Patrick and Nur also do notsupportplaintiff's argument thatVassi is divested of standing as the result of transferring his condominium to IPA. To the contrary, Patrick holds that the defendant has standing to raise a service of process defense, notwithstanding his property transfer to a third party during the pendency of the foreclosure action (see Patrick, 173 AD3d at 974-975). The defendant in Nur was an LLC (see Nur, 208 AD3d at 708). A deficiency judgment can be sought only against "a person" (see RPAPL 1371 [1]).

As Vassi has standing to defend the action, we now reach the merits of his arguments under RPAPL 1304.

RPAPL 1304 requires that preforeclosure notices be "in at least fourteen-point type" (RPAPL 1304 [1]). The notices attached to the affidavit of Belkis Carames, the assistant secretary to Nationstar Mortgage, LLC, appear in a large type size. Vassi's argument, that plaintiff introduced "no evidence of strict compliance with the express [type size] requirements imposed by statute" is a bare assertion insufficient to raise a triable issue of fact (see OneWest Bank, FSB v Cook, 204 AD3d 1025, 1027 [2d Dept 2022] [attorney's affirmation and a single-sentence assertion in the defendant's affidavit disputing the type size of the RPAPL 1303 notice were insufficient to raise a triable issue of fact]).

[*6]

Plaintiff also establishes, prima facie, that it mailed the preforeclosure notices in compliance with RPAPL 1304. In opposition, Vassi fails to raise an issue of triable fact. RPAPL 1304 requires that the notices "shall be sent by such lender, assignee (including purchasing investor) or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage" (RPAPL 1304 [2]). However, the statute does not specify the nature of the proof that must be submitted to satisfy the statute's mailing requirements.

In CIT Bank N.A. v Schiffman, the Court of Appeals held that the mailing requirements in RPAPL 1304 are satisfied by submitting evidence of "actual mailing . . . or . . . proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents" (Schiffman, 36 NY3d 550, 556 [2021]). If proof of mailing is based on the sender's business practice, the "'practice must be geared so as to ensure the likelihood that [the] notice . . . is always properly addressed and mailed'" (id. [internal citation omitted]). "Such proof need not be supplied by the employee charged with mailing the document . . . but can be offered in the form of an affidavit of an employee with 'personal knowledge of the practices utilized by the [company] at the time of the alleged mailing'" (id. [internal citations omitted]).

In her affidavit, sworn to on January 18, 2024, Carames avers that she has "personal knowledge of Nationstar's practices and procedures that were in place during the time period in question for generating and mailing 90-Day Pre-Foreclosure Notices pursuant to RPAPL 1304." Carames describes how the pre-foreclosure notices "are generated automatically using data from Nationstar's loan servicing computer system which identifies the loans that require said notices based on days of delinquency and the absence of any exclusion such as a bankruptcy or active loss mitigation plan." She describes Nationstar's mailing practices for both first class and certified mailings, explaining that "[u]pon mailing our computerized records are updated to reflect that the notice was actually sent and the day on which the notice was sent." Carames concludes that "[p]er my review of the records, the 90-Day Pre-Foreclosure Notices were mailed by first class mail and certified mail . . . on August 30, 2011" to Steve Vassi at the property address. She attaches copies of the pre-foreclosure notices to her affidavit, which appear on letterhead bearing the logo "Nationstar Mortgage" addressed to Vassi from Nationstar Mortgage LLC. Carames also attaches, as exhibit C, copies of Nationstar's computerized records bearing an entry corresponding to Vassi's loan number with the comment "20110830 NY90DAY LETTER SENT." This entry is consistent with her statement that the notices were mailed to Vassi on August 30, 2011.

[*7]

In opposition, Vassi contends that Carames' affidavit is inadmissible hearsay because she is silent as to whether the exhibits annexed to her affidavit, particularly exhibit C, were created in accordance with the general business practices that she describes in her affidavit. This argument fails to raise an issue of fact because Carames describes Nationstar's general business practices in generating the documents and describes exhibit C as "copies of the Business Records reflecting the mailing of the 90-Day Pre-Foreclosure Notices."

The evidence before the referee—specifically, Selva's February 24, 2022 affidavit and Rushmore's business records—substantially supported the report's findings on the amount due and owing under the note, accrued interest, and other expenses (see CPLR 4518; Marina Towers Assoc., L.P. v Yu, 177 AD3d 469, 469 [1st Dept 2019]; Bank of N.Y. Mellon v Gordon, 171 AD3d 197, 205 [2d Dept 2019]; Citimortgage, Inc. v Kidd., 148 AD3d 767, 768 [2d Dept 2017]).

Contrary to Vassi's argument, Selva's affidavit sufficiently establishes his authority to act as attorney-in-fact for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CIT, pursuant to a duly witnessed and notarized limited power of attorney.FN4 The limited power of attorney grants Rushmore broad authority in connection with its role as a mortgage servicer, to "execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate." The limited power of attorney also provides that such documents "may only be executed and delivered . . . if such documents are required or permitted under the terms of the related servicing agreements." Although the related servicing agreements are not submitted, that does not mean, as Vassi contends, that plaintiff failed to demonstrate prima facie that Selva had the authority to make the representations that he made. In his affidavit, Selva states "I am authorized to make this Affidavit." In addition, the limited power of attorney on its face grants Rushmore broad authority to act as a mortgage servicer, and Vassi submits nothing to contradict this evidence (cf. U.S. Bank N.A. v Tesoriero, 204 AD3d 1066, 1068 [2d Dept 2022]).

Finally, as defendant failed to set forth any conduct by plaintiff that would warrant the tolling of interest, the court providently declined to further do so (see U.S. Bank N.A. v Haughton, 189 AD3d 1305, 1307 [2d Dept 2020]).

Accordingly, the order and judgment (one paper) of Supreme Court, New York County (Francis A. Kahn, III, J.), entered on January 15, 2025, which granted plaintiff's motion to confirm the referee's report and for judgment of foreclosure and sale, and denied defendant's cross-motion for the tolling of interest, should be affirmed, without costs.

Order and judgment (one paper) Supreme Court, New York County (Francis A. Kahn, III, J.), entered on January 15, 2025, affirmed, without costs.

[*8]

Opinion by Moulton, J. All concur.

Manzanet-Daniels, J.P., Moulton, Gesmer, Rosado, Hagler, JJ.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 21, 2026

Footnotes

Footnote 1

By order dated February 13, 2019, the court tolled interest, fees, and expenses from October 21, 2013, until March 31, 2017.

Footnote 2

Because the foreclosure action involves a home loan as defined by RPAPL 1304, it is undisputed that Vassi was entitled to pre-foreclosure notices pursuant to the statute.

Footnote 3

By contrast, as a stranger to the mortgage and note, the third party to whom a defendant transfers the encumbered property lacks standing to raise a RPAPL 1304 defense on behalf of itself or the borrower (see U.S. Bank N.A. v Medina, 230 AD3d 1371, 1377 [2d Dept 2024]; Wilmington Sav. Fund Socy., FSB v Kutch, 202 AD3d 1030, 1034 [2d Dept 2022]; Hartford Funding, Ltd. v Harris, 193 AD3d 1035, 1036 [2d Dept 2021]; Citimortgage, Inc. v Etienne, 172 AD3d 808, 809-810 [2d Dept 2019]).

Footnote 4

By assignment dated May 22, 2018, plaintiff assigned the mortgage to RMAC Trust Series 2016-CIT.